2003-NMCA-002

60 P.3d 492

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Terry FROST, Defendant–Appellee.**

**No. 21,890.**

Court of Appeals of New Mexico.

Nov. 14, 2002.

Certiorari Denied, No. 27,803,
Dec. 19, 2002.

Patricia A. Madrid, Attorney General, M. Victoria Wilson, Assistant Attorney General, Santa Fe, NM, for Appellant.

Phyllis H. Subin, Chief Public Defender, Nina Lalevic, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

## OPINION

CASTILLO, Judge.

{1} The State appeals the trial court's order authorizing Defendant to serve the last four months of his six-month mandatory "jail term" as a DWI repeat offender in an electronic monitoring program (EMP) administered by the Chaves County Detention Center (CCDC). Based on the statutory authority for inmate release programs at local jails and our holding in *State v. Guillen*, 2001–NMCA–079, ¶ 11, 130 N.M. 803, 32 P.3d 812, we affirm.

## BACKGROUND

{2} Defendant entered a nolo contendre plea to fourth-degree felony driving while intoxicated (DWI) under NMSA 1978, § 66–8–102(G) (1999). The trial court sentenced Defendant to eighteen-months imprisonment, suspended twelve months of the sentence, and ordered the twelve-month suspended sentence to be served on probation. Neither party contends that there was any illegality in the original judgment and sentence entered by the court. For medical reasons, Defendant began serving his probation immediately. Defendant violated the terms of his probation, his probation was revoked, and he was placed in the CCDC in August 2000 to begin serving the last four months of his six-month jail term.

{3} Defendant pled guilty to violating his probation, and during the hearing on his sentencing, Defendant asked the trial court to allow him to serve the remainder of his jail term in the CCDC EMP. Motivated by the fact of Defendant's medical condition which "posed an unreasonable burden on the county if he continues to be in the confinement," the court agreed with Defendant's request. The trial court ordered that Defendant "may serve" his sentence in the EMP under the supervision and control of the CCDC "if deemed appropriate by the Jail Administrator" with the condition that Defendant reside with his daughter Betty and be supervised by either of his two daughters at all times. The trial court determined that, because the EMP would be administered by the detention center, Defendant was in the "custody" of the detention center for purposes of satisfying his six-month "jail term."

{4} The State objected to the sentencing order prepared by Defendant. At the presentment hearing, the State argued that the DWI statute is one of a small number of statutes that mandate jail time and that participation in the EMP would not meet the requirements of a mandatory six-month "jail term" imposed by Section 66–8–102(G). The trial court disagreed with the State, and the order was entered.

## I. Standard of Review

{5} Section 66–8–102(G) relates to DWI convictions and states as follows:

Upon a fourth or subsequent conviction under this section, an offender is guilty of a fourth degree felony, as provided in Section 31–18–15 NMSA 1978, and shall be sentenced to *a jail term* of not less than six months, which shall not be suspended or deferred or taken under advisement. (Emphasis added.)

{6} The issue of whether the trial court's sentence satisfied the requirement of a six-month jail term for a felony DWI offender presents us with a question of statutory interpretation that this Court reviews de novo. *See State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995) ("Interpretation of a statute is an issue of law, not a question of fact."); *State v. Perez*, 2002–NMCA–040, ¶ 10, 132 N.M. 84, 44 P.3d 530 (stating that issues of statutory interpretation are reviewed de novo).

## II. Discussion

{7} On appeal, the State makes two main arguments: (1) the legislature did not authorize trial courts to allow felony DWI offenders to serve their mandatory six-month "jail term" anywhere other than jail; and (2) the

actual program to which Defendant was admitted is not a statutorily authorized alternative to the "jail term" required by Section 66–8–102(G). Defendant argues that the State failed to preserve the issue of statutory authorization. We will first address the preservation issue, and then turn to the State's contentions.

### A. Preservation

{8} Defendant accurately observes that the State's Brief in Chief contains no transcript references to any argument below regarding the absence of statutory authority for the trial court's sentencing decision. The State did not file a Reply Brief so there is no rebuttal to the Defendant's contention that the State failed to preserve this argument. Generally, this would provide sufficient grounds to refuse consideration of this issue based on lack of preservation. *See Fitzgerald v. Open Hands,* 115 N.M. 210, 212, 848 P.2d 1137, 1139 (Ct.App.1993) (holding that when a party's brief does not cite any references to the transcript or the record where the issue was raised below, no error is shown). In this case, however, the question of whether the trial court had the requisite statutory authority to sentence Defendant as it did is an issue of subject matter jurisdiction which cannot be waived and can be raised at any time. *See Perez,* 2002–NMCA–040, ¶ 11, 132 N.M. 84, 44 P.3d 530 (noting that, although the issue of whether the defendant could be sentenced as an adult was not raised below, "a trial court lacks jurisdiction to impose an illegal sentence" which is an issue "of subject matter jurisdiction, which cannot be waived and can be raised at any time"). Consequently, we will review the State's arguments.

### B. Trial Court's Authority

{9} Defendant was sentenced to the CCDC. The CCDC is the equivalent of a county jail, so Defendant was sentenced to jail. *See State v. Brown,* 1999–NMSC–004, ¶ 9, 126 N.M. 642, 974 P.2d 136 (discussing defendant's sentence to a county detention center as a sentence "to jail"). While the trial court concluded that the CCDC EMP "would be a reasonable alternative to satisfy

the mandatory sentence in this matter," the State contends that time in the CCDC EMP is not equivalent to "jail time" as contemplated by Section 66–8–102(G).

{10} Relying on *State v. Hovey,* 87 N.M. 398, 399, 534 P.2d 777, 778 (Ct.App.1975), the State argues that a trial court's power to impose a particular sentence is limited by the legislature and that the legislature has not authorized trial courts to substitute confinement at home for the mandatory "jail term." In making its argument, the State comprehensively lists the statutory limitations applicable to felony DWI sentences. The mandatory minimum six-month jail term portion of the sentence cannot be (1) reduced to anything less than six months; (2) deferred or suspended; or (3) taken under advisement. Section 66–8–102(G). Further, this sentence is not subject to conditional discharge, NMSA 1978, § 31–20–13(C) (1994), nor can good-time credit be given. NMSA 1978, § 33–3–9(B) (1995). Essentially, the State contends that the absence of express statutory language authorizing DWI jail terms to be satisfied by home confinement, as well as the many limitations put on felony DWI sentences, support its position that the legislature did not authorize a jail term to be served by means of anything less than actual confinement within a jail, and not including an EMP. We disagree.

{11} To evaluate the State's position, we must look to the definition of confinement and how sentences are served. Two statutes require a trial court to give credit for time spent in confinement. NMSA 1978, § 31–20–11 (1977) allows credit to convicted felons for time in confinement pending appeal, and NMSA 1978, § 31–20–12 (1977) allows presentence confinement credit for persons charged with a felony.

{12} During Defendant's appeal, this Court issued its decision in *Guillen* which held that under Section 31–20–12, defendants convicted of a fourth or subsequent DWI offense may receive pre-sentence credit for time spent while under house arrest in an EMP. The EMP constituted "official confinement" within the meaning of Section 31–20–12. *Guillen,* 2001–NMCA–079, ¶ 11, 130 N.M. 803, 32 P.3d 812. Since pre-sentence

confinement in an EMP qualifies under Section 31–20–12 for credit toward the mandatory six-month jail term imposed by Section 66–8–102(G), it follows that post-sentence confinement in the same EMP can be credited toward the same mandatory jail term for repeat DWI offenders. *See also State v. Martinez*, 1998–NMSC–023, ¶ 10, 126 N.M. 39, 966 P.2d 747 (interpreting Section 31–20–12 and holding that "the Legislature intended to require that trial courts grant presentence credit, for official confinement, to defendants convicted of a fourth or subsequent offense of DWI").

{13} *Guillen* was a refinement of *State v. Fellhauer*, 1997–NMCA–064, ¶ 17, 123 N.M. 476, 943 P.2d 123 where we held that time spent out of a jail may qualify as official confinement for the purposes of receiving pre-sentence confinement credit under Section 31–20–12 when

(1) a court has entered an order releasing the defendant from a facility but has imposed limitations on the defendant's freedom of movement, OR the defendant is in the actual or constructive custody of state or local law enforcement or correctional officers; and (2) the defendant is punishable for a crime of escape if there is an unauthorized departure from the place of confinement or other noncompliance with the court's order.

While *Fellhauer* and *Guillen* do not address the precise issue of whether official confinement in a program such as the CCDC EMP is the same as serving a "jail term" for purposes of Section 66–8–102(G), the holding in both cases appears dispositive.

{14} The language in Section 31–20–11, entitling Defendant to credit for time served in "confinement" while awaiting the outcome of his appeal, is almost identical to, and in fact less restrictive than, the language in Section 31–20–12, entitling a defendant to credit for time spent in an EMP as "official confinement" before sentencing. Since a defendant convicted of a felony DWI can be credited for pre-sentence time spent in an EMP as "official confinement," such language in Section 31–20–11 should lead to a similar result. Felony DWI defendants may be sentenced to a "jail term" in programs such as the CCDC EMP that are equivalent to "official confinement."

## C. Chaves County Detention Center Electronic Monitoring Program

{15} The State argues that there is no express statutory authorization for the broad type of electronic monitoring programs implemented by the CCDC and that such programs are only authorized for the probation and parole portions of a defendant's sentence. Additionally, the State argues that NMSA 1978, § 33–2–45 (1971) limits the time an inmate can be off jail premises to thirty days and, therefore, a six-month EMP is contrary to statute. First, we review the program.

{16} The CCDC EMP is described in a several page document divided into policy and procedures and rules and regulations (the Document). Even though the Document was not admitted into evidence nor was it attached to the sentencing order, the district court was aware of the requirements of the CCDC EMP. Additionally, the State attached a copy of the Document to its Brief in Chief as Appendix A, and Defendant did not object to the court taking judicial notice of this document. Therefore, we may take judicial notice of the program as needed. *See State ex rel. Human Services Dep't v. McDermott*, 1996–NMCA–048, ¶ 16, 121 N.M. 609, 916 P.2d 228 (taking judicial notice of documents excluded below when the lower court was aware of the documents, the documents were filed as part of the record proper enabling review on appeal, and there was no dispute concerning the contents of the documents or their interpretation).

### 1. Probation and Parole

{17} We agree with the State that NMSA 1978, §§ 31–20–3 and –5 (1985) authorize EMPs for defendants on probation; however, these statutes contain no language expressly limiting participation in EMPs to probation and parole programs. We rely on NMSA 1978, § 30–22–8.1 (1999) which deals with community custody release programs and imposes criminal liability on persons who attempt to escape from this program. Section 30–22–8.1 reads as follows:

A. Escape from a community custody release program consists of a person, excluding a person on probation or parole, who has been lawfully committed to a judicially approved community custody release program, including a day reporting program, an electronic monitoring program, a day detention program or a community tracking program, escaping or attempting to escape from the community custody release program.

B. Whoever commits escape from a community custody release program, when the person was committed to the program for a misdemeanor charge, is guilty of a misdemeanor.

C. Whoever commits escape from a community custody release program, when the person was committed to the program for a felony charge, is guilty of a felony.

The plain language of the statute clearly refers to community custody release programs distinct from those that are established for probation and parole purposes. Electronic monitoring programs are specifically mentioned in the statute. It is doubtful that the legislature would impose criminal liability on escapees from a community custody release program, including those subject to EMP confinement, if the program was not implicitly authorized by the legislature. Consequently, we hold that EMPs are not limited to probation or parole programs.

### 2. Inmate Release Programs

 {18} As stated in the Document, authority for implementation of the CCDC EMP is based on NMSA 1978, §§ 33–2–43 (1969), –44 (1971), and 33–3–24 (1981). Sections 33–2–43 and –44 authorize establishment of inmate release programs in New Mexico penitentiaries. Section 33–3–24 authorizes counties and municipalities to establish similar types of programs in their facilities. It appears that community custody release programs described in Section 30–22–8.1, which are a variety of such release programs.

{19} The State argues that Section 33–2–45 limits time off the penitentiary premises to thirty days or less, also applies to all local prisoner release programs and would therefore limit prisoner release programs to a maximum of thirty days. When the legislature authorized counties and municipalities to conduct prisoner inmate release programs, Section 33–2–45 was not included in the authorizing statute. The legislature is assumed to be aware of existing law when it undertakes to amend to its own laws. *Quintana v. N.M. Dep't of Corr.*, 100 N.M. 224, 227, 668 P.2d 1101, 1104 (1983). Therefore, we conclude that prisoner release programs developed by local jails are not subject to this thirty-day limitation.

{20} The CCDC EMP is a statutorily authorized custody release program operated by a county jail, to which the legislature has attached a criminal penalty for escape. *See* NMSA 1978, § 33–2–46 (1980); Section 30–22–8.1. Consequently, time confined in the EMP falls within the scope of what the legislature has intended by requiring a mandatory six-month "jail term" imposed by Section 66–8–102(G).

### CONCLUSION

{21} The sentence of the trial court is affirmed.

{22} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, and JAMES J. WECHSLER, Judge.